UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK PAYTON, )
 )
    Plaintiff, )
 )    No. 07 C 3160
v. )
 )    Judge John W. Darrah
THE HOME DEPOT, INC., )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark Payton, brought suit against Defendant, The Home Depot, Inc., alleging that Home Depot discriminated against him on the basis of race and age by failing to promote him and then terminating him, in violation of Title VII, 42 U.S.C. § 1981, and the Age Discrimination Employment Act ("ADEA"), 29 U.S.C.A. § 621., *et seq*. Payton also alleges that his termination violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Before the Court is Home Depot's motion for summary judgment.

## BACKGROUND

The Court derives the following background facts from the parties' filings of record, including their filings required under Local Rule 56.1.[1] Where the parties disagree over relevant facts, the parties' competing versions are noted and/or are addressed in the pertinent analysis section below.

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the Court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Payton, an African-American, was born on February 13, 1962. (Def.'s 56.1 ¶ 1.) In February 2000, Payton was hired as a salesperson in the appliance department of Home Depot store located in Bolingbrook, Illinois. (Def.'s 56.1 ¶ 2.) In 2001, Payton was transferred to the Home Depot store in Woodridge, Illinois. (Def.'s 56.1 ¶ 3.) At the Woodridge store, he worked as an Appliance Sales Associate in the Kitchen and Bath Department and the Appliances Department. (Def.'s 56.1 ¶ 4.) The Manager of the Woodridge store, Steve Sollinger, considered Payton to be an "adequate, but not outstanding" employee. (Def.'s 56.1 ¶ 6.) Sollinger had concerns about Payton's work attendance and punctuality. (Def.'s 56.1 ¶ 6.) Payton received written notices of concerns regarding those issues. (Def.'s 56.1 ¶ 5.)

In order to be eligible for a promotion, Home Depot employees must express their preference for the promotion through a computerized Job Preference Process ("JPP") system. (Def.'s 56.1 ¶ 10.) Payton learned of the JPP system during his orientation at Home Depot. (Def.'s 56.1 ¶ 10.) In June 2004, Payton claims he told Sollinger that he was interested in a promotion to Department Manager for his store's Kitchen and Bath Department. (Def.'s 56.1 ¶ 7.) Payton believes that Sollinger was busy at the time and may not have even heard what Payton was saying. (Def.'s 56.1 ¶ 7). However, Payton does recall that Sollinger asked him whether he had entered his interest into Home Depot's JPP system. (Def.'s 56.1 ¶ 8.) Payton had not done so and did not do so until August 2004. (Def.'s 56.1 ¶¶ 9, 11.)

On June 28, 2004, Sollinger hired Michael Geron, a Caucasian, to fill the position of Department Manager for the Kitchen and Bath Department at the Woodridge Home Depot store. (Def.'s 56.1 ¶¶ 13, 16.) Geron's experience at the time he was hired included one year as a Cabinet Department Supervisor at Menard's, one-and-a-half years as a Product Manager for a

distribution and delivery company, and three years as an Appliance Buyer for Best Buy. (Def.'s 56.1 ¶ 14.) Sollinger believed that Geron had "a solid grasp of product movement." (Def.'s 56.1 ¶ 14.)

On August 25, 2004, on Geron's recommendation, Sollinger hired Chris Fischer, who is Caucasian. (Def.'s 56.1 ¶¶ 18, 24.) Sollinger was impressed by Fischer's performance during his first few months at the Woodridge store, including his initiative to understand the business. (Def.'s 56.1 ¶ 20.) Sollinger considered Fischer to be an "outstanding" performer. (Def.'s 56.1 ¶ 20.) When, in October 2004, Geron went out on a leave, Sollinger felt that Fischer showed a willingness to take on additional responsibilities in Geron's absence. (Def.'s 56.1 ¶ 21.) In mid-October 2004, Sollinger decided to name Fischer as the new Department Manager for the Kitchen and Bath Department. (Def.'s 56.1 ¶ 22.)

On December 11, 2004, Sollinger hired Mark Demmin as a Kitchen Designer in the Woodridge store. (Def.'s 56.1 ¶¶ 25, 29.) Demmin, a Caucasian, is seven or eight years older than Payton. (Def.'s 56.1 ¶¶ 28, 29.) Demmin's experience at the time he was hired included six years as a freelance architectural assistant and designer and six years as a Regional Sales Manager for two interior design companies. (Def.'s 56.1 ¶ 26.) Sollinger selected Demmin for the position, despite his understanding that Payton, who had taken a multi-week training program certifying him as a "Home Depot Kitchen Designer," was interested in the position. (Def.'s 56.1 ¶¶ 26, 27.)

The Home Depot Associate Guide, which was provided to Payton upon his hiring, contains a section entitled "Standards of Conduct." (Def.'s 56.1 ¶¶ 33, 34.) That section explains that "Major Work Rule Violations . . . are considered to be so severe in nature that they

would normally result in termination for a first offense." (Def.'s 56.1 ¶ 34.) Among the Major Work Rule Violations enumerated in the Associate Guide is "Selling, buying or distributing merchandise at other than the authorized price." (Def.'s 56.1 ¶ 35.)

On Friday, December 17, 2004, Payton asked sales associate Duane Rogers to cut a piece of plywood for him, which Payton planned to take home on his lunch hour to fix a door. (Def.'s 56.1 ¶ 36.) Payton understood that he needed to pay for the entire four-by-eight sheet of plywood from which the piece was cut. (Def.'s 56.1 ¶ 37.) Payton told Rogers that he would pay for the entire sheet and that he would come back later to pick up the remainder of the sheet. (Def.'s 56.1 ¶ 37.) Payton wrote down the SKU number from the sheet of plywood and took the piece that Rogers had cut to the cash register. (Def.'s 56.1 ¶ 39.) Payton presented the piece of plywood and the SKU number for the sheet from which it had been cut to Myunja Kim, the employee at the register. (Def.'s 56.1 ¶¶ 39, 40.) Kim entered the SKU number in the register, which then displayed a price of $8.99. (Def.'s 56.1 ¶ 40.) Payton claims that Kim then looked at the piece of plywood and said "No, it is cull lumber," and asked him, "How about 31 cents?" (Def.'s 56.1 ¶ 41.) Cull lumber is wood that Home Depot sells for scrap. (Def.'s 56.1 ¶ 38.) Payton understood that the piece of plywood was not cull lumber but, nonetheless, agreed to pay only 31 cents and left the store with the plywood. (Def.'s 56.1 ¶ 42.)

Upon his return to the store that afternoon, Rogers and Kim each approached Payton separately and told him that they thought someone from Loss Prevention was going to want to talk to him. (Def.'s 56.1 ¶ 43.) Although Payton understood at that point that there was an issue with the purchase, he did not attempt to pay the remainder he owed for the piece of wood. (Def.'s 56.1 ¶ 44.)

4

The following Monday, December 20, 2004, Payton went out on a leave of absence, which lasted through January 3, 2005. (Def.'s 56.1 ¶ 45.) On December 21, 2004, Payton called Human Resources Manager Dee Viertel. Payton explained to Viertel that what he had paid for the plywood "wasn't the amount" and asked if he could pay the remaining balance when he returned from leave. (Def.'s 56.1 ¶ 45.) Viertel agreed that he could. (Def.'s 56.1 ¶ 45.)

Before Home Depot was able to complete its investigation, Payton went out on a second leave of absence, which lasted from January 12 through January 18, 2005. (Def.'s 56.1 ¶ 47.) On January 26, 2005, District Loss Prevention Manager Andre Brown and Loss Prevention Manager Joel Schuster met with Payton to talk about the transaction. (Def.'s 56.1 ¶ 48.) At Brown and Schuster's request, Payton prepared a statement in which he admitted to "not attending to the prompt payment of the four-by-eight sheet of plywood." (Def.'s 56.1 ¶ 51.) Payton told Brown that he was responsible for the difference between the SKU price and what he paid and that he would pay that amount. (Def.'s 56.1 ¶ 52.)

After the meeting, Brown gave Payton's statement to Sollinger, Viertel, Regional Loss Prevention Manager Katie Logan, Regional Human Resources Manager Jody Beemsterboer and District Manager Jim Miller. (Def.'s 56.1 ¶ 56.) Sollinger, Beemsterboer, Viertel and Miller all agreed that Payton should be terminated immediately for his knowing violation of Home Depot's "Major Work Rule" prohibiting "selling, buying or distributing merchandise at other than the authorized price." (Def.'s 56.1 ¶ 56.) Sollinger and Brown then returned to the room where Payton had been waiting with Schuster and Sollinger terminated Payton, telling him that he had committed a major company violation, requiring immediate termination. (Def.'s 56.1 ¶ 58.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

In his Complaint, Payton alleges that he was discriminated against on the basis of race, in violation of Title VII and/or § 1981, and on the basis of age, in violation of the ADEA, and that Home Depot retaliated against him for taking time off in violation of the Family and Medical Leave Act. Payton claims that he was denied several promotions as a result of discrimination and that his termination was due to discrimination and retaliation.

*Failure to Promote*

Payton alleges that his failure to be promoted three separate times was the result of Home Depot's age and race discrimination. Payton attempts to proceed under both the direct and indirect method of showing discrimination. *See Rudin v. Lincoln Land Community College*, 420 F.3d 712, 719 (7th Cir. 2005) ("[a plaintiff] 'can avert summary judgment . . . either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a *prima facie* case under the *McDonnell Douglas* formula.'") (*Rudin*) (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 940 (7th Cir. 1997)). Plaintiff attempts to proceed under both methods.

To establish a *prima facie* case under Title VII, § 1981, or the ADEA, Payton must show (1) that he is a member of a protected group; (2) that he applied and was qualified for the position sought; (3) that he was rejected for the position; and (4) that the employee promoted was not a member of the protected group and was not better qualified for the position. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2002) (Title VII and the ADEA);

*Jones v. General Electric Inf. Services*, 3 F.Supp.2d 910, 918 (N.D. Ill. 1998) (§ 1981). The first and third requirements are met with respect to the three alleged instances of discrimination on the part of Home Depot for failing to promote Payton.

The first promotion that Payton was allegedly denied due to discrimination was the position of Department Manager for the Kitchen and Bath Department. Home Depot hired Michael Geron for the position instead of promoting Payton. Payton cannot make out a *prima facie* case with respect to this position as to his application and qualifications because he cannot show that he applied for the position. Payton was aware that to be eligible for a promotion, he was required to express his interest in the promotion through the JPP system. He did not do so. Payton's claim that Sollinger knew he was interested in the position does not qualify as an application. Thus, Payton cannot make out a *prima facie* case with respect to the Department Manager position.

The second instance of discrimination claimed by Payton allegedly resulted in Payton being passed over for the Department Manager position for a second time, this time in favor of Chris Fischer. For purposes of this motion, Home Depot concedes that Payton applied for and was qualified for the Department Manager position. Thus, the only disputed element necessary to establish a *prima facie* case is the fourth: whether or not the employee promoted (Fischer) was better qualified for the position than Payton. Home Depot argues that Payton cannot establish that he was more qualified than Fischer. Home Depot points to Sollinger's belief that while Payton was an "adequate, but not outstanding employee," Fischer demonstrated outstanding

performance and impressive initiative. Furthermore, Fischer was in the process of being promoted to Department Supervisor at his previous job, immediately before he was hired by Home Depot.

Payton's argument that Fischer was not better qualified rests on Fischer's young age (twenty-one at the time he was promoted), a history of employment dating back only four years, his short two-month tenure with Home Depot before being promoted, and details from Fischer's job application, which indicate that Fischer was unemployed for six months after leaving his first job and that his initial job application to Home Depot may have been denied. Payton argues that in contrast to Fischer's short resume, Payton "had managerial, administrative, and sales experience, having been employed as a store manager, assistant store manager, sales trainer, sales and marketing manager, and recruiting manager, among other previously held positions."

Payton has not offered any reliable evidence in support of his claims of an extensive work history. Payton directs the Court to a resume showing work experience dating back to 1985. However, the resume, on its face, was not created until after Payton was terminated by Home Depot and was not provided to Home Depot in discovery. Payton's job application submitted to Home Depot reflects far fewer qualifications. The application lists only College of DuPage, Nest Entertainment and Prudential Insurance as prior employers. As to these jobs, Payton claims only to have been an administrative assistant and independent distributor. When asked in the application what "work skills you possess or have experience in," Payton wrote only "appliance sales." Payton has produced no evidence indicating that Home Depot was aware, at the time of Fischer's promotion, of any qualifications or experience beyond what Payton listed on his job application initially submitted to Home Depot.

Considering the respective employment histories of Payton and Fischer, the Court finds that Payton has not established that he was the better qualified candidate for the job. Thus, Payton has failed to establish a *prima facie* case for discrimination with respect to Home Depot's failure to promote him to the Department Manager position in October 2004.

The third instance of alleged discrimination occurred when Home Depot hired Mark Demmin rather than Payton as Kitchen Designer in December 2004. Home Depot again argues that Payton cannot establish that he was the better qualified candidate. Home Depot points to Demmin's extensive design experience: Demmin had worked as a freelance architectural assistant and designer for six years before coming to Home Depot and had an additional six years of previous experience as a Regional Sales Manager for two interior design companies. Payton's primary qualification for the position was his completion of a two-to-four week program certifying him as a "Home Depot Kitchen Designer." Given the disparity in design experience between Demmin and Payton, Payton cannot establish that he was the better qualified candidate and, therefore, cannot make out a *prima facie* case with respect to the Kitchen Designer position.

Even assuming that Payton had established a *prima facie* case with respect to Home Depot's decision to promote Fischer over Payton (but not with respect to the hiring of Geron and Demmin), he cannot prevail on his claims based on Home Depot's failure to promote.

Once a plaintiff has established a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action. *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 844 (7th Cir. 1996)

(*Mills*). If the Defendant produces a legitimate, non-discriminatory reason, the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for discrimination. *Mills*, 83 F.3d at 845.

Home Depot claims that Fischer was selected over Payton for the Department Manager position because he was better qualified. Sollinger was impressed by Fischer's initiative and considered his performance outstanding. By contrast, Sollinger was concerned about Payton's attendance and considered him only an "adequate" employee. Payton does not offer any direct evidence that Home Depot's reason for promoting Fischer was pretextual. Rather, Payton points out what he considers to be weak points in Fischer's resume. This is not sufficient to meet his burden of showing Home Depot's reason to be pretextual. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573 (7th Cir. 1998) (the court does not "sit as a super-personnel department that reexamines an entity's business decisions").

Thus, Payton has failed to show through the indirect method that Home Depot discriminated against him in denying him any of the three promotions at issue.

Payton also claims that he can prove discrimination through the direct method. A plaintiff proceeding according to the direct method may rely on both direct evidence and circumstantial evidence. *Rudin*, 420 F.3d at 720. Under the direct method, a plaintiff can avoid summary judgment by creating a triable issue of whether the adverse employment action had a discriminatory motivation. *Rudin*, 420 F.3d at 721.

Payton purports to present circumstantial evidence of discrimination. He notes that three Caucasian employees – Geron, Fischer and Demmin – were promoted, whereas, Payton was not. Payton also alleges that Scott Kujat, a Home Depot sales associate, a Caucasian, was not

11

terminated or disciplined in any way for misrepresenting a competitor's price to improperly obtain a discount from Home Depot. Payton argues that the disparate treatment between himself and Kujat constitutes circumstantial evidence that race was a motivating factor in Home Depot's decision making.

The evidence offered by Payton is not sufficient to meet his burden of creating a triable issue of whether his failure to obtain the promotions was the result of discrimination. The promotions of Geron and Demmin do not even establish a *prima facie* case of discrimination. Payton has failed to rebut the legitimate non-discriminatory reason advanced by Home Depot for promoting Fischer. Evidence that falls short of establishing discrimination under the indirect method cannot alone meet the burden of creating a triable issue under the direct method. Nor does Payton's argument regarding Kujat meet that burden. Payton provides almost no details of the incident involving Kujat, making it impossible to compare his case to Payton's. Therefore, Payton has failed to establish discrimination through the direct method as well.

*Termination*

The same direct or indirect method is used to evaluate discriminatory discharge claims under Title VII, § 1981 and the ADEA. *Alexander v. Biomerieux, Inc.* 485 F.Supp.2d 924, 930-31 (N.D. Ill.,2007); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998). In order to establish a *prima facie* case, a plaintiff must show: (1) he was within a protected class; (2) he was performing to the employer's legitimate expectations; (3) he suffered an adverse employment action; and 4) the defendant treated similarly situated employees outside the protected class more favorably. *Logan v. Kautex Textron North America*, 259 F.3d 635, 639 (7th Cir. 2001).

With respect to his termination, Payton cannot establish a *prima facie* case because he cannot show that he was performing to Home Depot's legitimate expectations. Payton violated a Major Work Rule by knowingly failing to pay full price for the piece of plywood he purchased. Even if Payton could establish a *prima facie* case, he cannot show that Home Depot's stated reason for terminating him, violation of the Major Work Rule, was pretextual. As set out above, Payton claims that Kujat was not disciplined for an allegedly similar violation. Payton provided no competent evidence to support his claim and offers only vague hearsay-based descriptions of the Kujat incident. Thus, Payton cannot show discrimination with respect to his termination through the indirect method.

Payton also fails under the direct method. Payton relies on the same evidence as he did regarding his claim for Home Depot' failure to promote him – that Geron, Fischer and Demmin were promoted and that Kujat was not disciplined. As stated above, this evidence is not sufficient to meet Payton's burden of creating a triable issue under the direct method.

*Retaliation under the FMLA*

Payton's Complaint alleges that he was terminated partly in retaliation for taking leave, in violation of the FMLA. Payton completely abandons this claim in his response to Home Depot's motion for summary judgment, failing completely to respond to Home Depot's arguments. In any case, to establish a *prima facie* case of retaliation under the FMLA, Payton would be required to show that he was performing his job in a satisfactory manner. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). As explained above, Payton cannot make this showing.

## CONCLUSION

For the reasons stated above, Defendant's Moton for Summary Judgment is granted.

Dated: October 1, 2008

JOHN W. DARRAH
United States District Court Judge